UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Criminal No. 6:17-cr-00032-GFVT-HAI |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| WILLIAM TIMOTHY SUTTON, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Before this Court are four Motions in Limine filed by the Defendant William Timothy Sutton. [R. 36; R. 40; R. 41; R. 51.] The Defendant seeks to exclude certain pieces of evidence from being presented to the jury. For the reasons stated below, each motion will be **DENIED**.

**I**

William Timothy Sutton was indicted on June 22, 2017, for four counts of Murder for Hire in violation of 18 U.S.C. § 1958 and one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C § 922(g)(1). Sutton allegedly paid someone to murder four victims, identified in the indictment as A.T., B.H., T.S., and S.B. [R. 1.]

Sutton maintains that certain pieces of noticed evidence are inadmissible under Federal Rule of Evidence 404(b) and Federal Rule of Evidence 403. Pursuant to 404(b), "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Nevertheless, the rule goes on to note in relevant part that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge,

identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Sixth Circuit has adopted a three-part test that courts use to decide whether Courts should admit or exclude evidence under Rule 404(b):

> First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potentially prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (emphases removed); *see also United States v. Yu Qin*, 688 F.3d 257, 262 (6th Cir. 2012).

Rule 403 is captured by the third step of 404(b) analysis established by the Sixth Circuit and explains that, even if the evidence is found relevant pursuant to 404(b), the Court should exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Given the potential for confusion, misuse, and unfair prejudice from other act evidence, it is preferable that the district court make an *explicit* finding regarding the Rule 403 balancing." *United States v. Hardy*, 228 F.3d 745, 751 (6th Cir. 2000).

Notably, Rule 404(b) "does not extend to evidence of acts which are 'intrinsic' to the charged offense." Fed. R. Evid. 404 advisory committee's note. Put another way, "Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998) (quoting *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995)). Ultimately, this Court has broad discretion to determine whether bad acts evidence is admissible. See, e.g., *United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007).

## II

### A

The Court analyzes the first three Motions in Limine [R. 36; R. 40; R. 41] together as they form an ongoing criminal story. Because they "are part of a continuing pattern of illegal activity," *Weinstock*, 153 F.3d at 276, and the probative value is not substantially outweighed by unfair prejudice or any other exception outlined in Fed. R. Evid. 403, the Motions in Limine will be denied. [R. 36; R. 40; R. 41.]

First, Sutton seeks to exclude the subject matter of a previous felony, but not the actual felony itself. In July 2015, Sutton threatened to kill T.S., who was a witness in a pending case. [*See* R. 36 at 1.] By admission of Sutton, this is the same T.S. who is identified in the current indictment. [*Id.*; R. 1.] Consequently, Sutton was convicted in May 2016 of intimidating a participant in the legal process, T. S., in Whitley Circuit Court. [*Id.*] Relevant to the case at bar, this felony was initially prosecuted by B.H., another named victim in the current indictment, and Sutton was eventually indicted by A.T., another named victim in the current indictment. [R. 44 at 5.] Sutton argues that having already been convicted of threatening to kill T.S. is not background evidence, and, if it is, the probative value of this evidence is substantially outweighed by its prejudicial effect. [R. 36.]

Second, Sutton seeks to exclude statements of William Rogers, Jr. and his girlfriend Adrienne Proffitt. [R. 36.] Statements provided from these witnesses suggest that in March 2017, Sutton attempted to hire Rogers to kill T.S. and possibly S.B., both identified in the current indictment. [R. 40.] The Government alleges that the Rogers heard the Defendant say multiple times that he wanted to "these women killed and that he would pay 'good money to have it

done.'" [R. 44 at 4.] Rogers attempted to record the Defendant saying these things, but wasn't able to due to poor sound quality. [*Id.*] Rogers eventually quit his job and Defendant "contacted the Kentucky State Police by telephone and advised them that Will Rogers had approached him and offered to kill Smith for money." [*Id.*] The Kentucky State Police contacted Rogers and Adrienne Proffitt, who both reported that Sutton had actually been the individual who wanted the women killed. [*Id.*] "Based on conflicting evidence, the State Police did not further pursue the investigation. [*Id.*] He states the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. [R. 36. at 2.]

Third, Sutton seeks to exclude evidence gathered from statements of multiple witnesses "who described prior instances where Sutton choked [T.S.] and cut the throat of [S.B.]," who are identified in the indictment. [R. 41.] Again, he states the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. [*Id.* at 2.]

The Government counters, and this Court agrees, that the Motions in Limine should be denied because they are being introduced as proper background evidence and are intrinsic to and inextricably intertwined with the criminal conduct charged here. [*See* R. 44 at 1.] Further, the evidence is probative of both intent and motive under 404(b). [*Id.*]

Turning to the required 404(b) test, "[f]irst, the district court must decide whether there is sufficient evidence that the other act in question actually occurred." *Jenkins*, 345 F.3d at 937. The Defendant has conceded in his briefing that the factual predicate in his First and Third Motions in Limine, related to his felony and assaults, exists, and this element is met as to his First and Third Motions.

However, the Defendant argued in open Court immediately before opening statements that he is challenging the factual basis of the William Rogers incident. Specifically, Defendant

argues that, because the Commonwealth Attorney investigated and did not return an indictment on these allegations, there is no factual basis for this incident. The Government countered that the factual basis exists because it was Sutton himself who called the Kentucky State Police and reported the incident. "The prosecution is not required to prove by a preponderance of the evidence that a prior bad act occurred, but it may not present similar acts 'connected to the defendant only by unsubstantiated innuendo.'" *United States v. Mack*, 729 F.3d 594, 602 (6th Cir. 2013). Federal Rule of Evidence 104 guides the Court in determining "questions of relevance conditioned on a fact." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later." Fed. R. Evid. 104. Finally, there is a remedy available to the Defendant here if "the proponent has failed to meet this minimal standard of proof, the trial court must instruct the jury to disregard the evidence." *Huddleston*, 485 U.S. at 690. The Government has submitted enough proof to surmount the low standard of proof here that the William Rogers incident did actually occur by indicating that Sutton himself actually called the Kentucky State Police and that Rogers's story was confirmed by speaking with Rogers and Adrienne Proffitt. Defendant's only evidence that this act did not occur is that the Commonwealth Attorney did not believe there were "grounds" sufficient to seek an indictment. There can be multiple reasons why a prosecutor decides to not pursue an indictment and this piece of evidence standing alone does not overcome the evidence the Government has submitted.

Next, "the district court must decide whether the evidence of the other act is probative of a material issue other than character." *Jenkins*, 345 F.3d at 937. The Government argues this is

background evidence needed to tell their theory of the case. To be admissible under 404(b), background evidence should have

> [A] causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). In *Reyes*, evidence showing "the circumstances from which the conspiracy arose—the witnesses described the personal relationships and events in which the conspiracy took root" was properly admitted as background evidence. *United States v. Reyes*, 51 Fed. App'x 499, 494 (6th Cir. 2002). An act committed five years prior to the current indicted act is not too long ago to be reasonably probative. *United States v. Wynn*, 987 F.2d 354, 357 (6th Cir. 1993). Also, "[u]se of prior criminal actions to show intent is appropriate, and longstanding, under Rule 404 in this circuit." *Id.* The evidence of Sutton's prior felony conviction involving threatening to kill T.S., which was prosecuted by A.T. and B.H.; that he tried to hire Rogers to kill T.S. and S.B.; and his history of assaulting T.S. and S.B. seems to meet the exact requirements of background evidence admissible under 404(b). Most convincingly, each of these acts together seem to prelude the current criminal act, culminating in the alleged conduct Sutton in currently indicted for. *Hardy*, 228 F.3d at 748. These pieces of evidence also support the allegation that Sutton intended for T.S. and S.B. to be killed and actively worked towards that for several years before allegedly successfully hiring an individual to kill them. *See Wynn*, 987 F.2d at 357. Because these pieces of evidence are proper background evidence, this element is also met.

Even if the first two elements are met, the Court must still decide, "whether the probative value of the evidence is substantially outweighed by its potentially prejudicial effect." *Jenkins*, 345 F.3d at 937. Evidence should be excluded if it will cause "unfair prejudice, [confuse] the

issues, mislead[] the jury, [cause] undue delay, wast[e] time, or needlessly present[] cumulative evidence." Fed. R. Evid. 403. This evidence is certainly prejudicial, but this Court finds that its prejudicial effect is not outweighed by its probative value. Sutton has been indicted for hiring someone to murder four individuals, an indictment that is weighty and prejudicial on its own. Defense counsel argues that the jury will confuse the multiple times he attempted to murder individuals named in this indictment, but that is precisely why this evidence should be admitted, because it shows his series of attempts of murdering T.S. and S.B. It is not misleading to the jury to show that someone convicted of attempting to have someone murdered had previously attempted to murder that person and also previously attempted to hire someone to murder that person. It is simply a larger picture of a story that will help the jury understand the relationships implicated in this alleged criminal act. Evidence of Sutton's prior intent to kill the named individuals, is "crucial for determining his guilt or innocence." *Wynn*, 987 F.2d at 357. Though the evidence is prejudicial, its probative value outweighs the prejudice.

**B**

Finally, Sutton seeks to exclude recorded jail calls from Sutton to his wife, Joyce Sutton, and a hand-written note found in his cell to his wife per the martial communications privilege. [R. 51.] The calls in question occurred while Sutton was in Whitley County Detention Center and Laurel County Detention Center and each call played a recorded statement at the beginning of the call, alerting both parties that their call was being record. [R. 52 at 3.] According to testimony of counsel in open Court, Defense counsel alleges the handwritten note was written by Defendant and held up to the communication glass while he was incarcerated so that his wife could see the note. Officials found this note in Sutton's cell. [R. 51 at 1.] The note read in relevant part, "[r]emember to tell Mike: you transported weapons to shop. Mike put them under

back shelf and had full control over then when I gave them to him." [R. 51-1.] (emphasis in original)  Because Sutton has not established that these communications were made in confidence and they were conversations related to an ongoing illegal activity, this Motion in Limine is denied.

The Sixth Circuit has established three prerequisites to assert the marital communications privilege:

> (1) At the time of communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to 'utterances or expressions intended by one spouse to convey a message to the other,' . . . ; ***and (3) the communication must be made in confidence.***"

*United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993) (emphasis added; internal quotations omitted).  There is an exception to the privilege "for conversations regarding joint ongoing or future patently illegal activity." *United States v. Howard*, 216 F. App'x 463, 471 (6th Cir. 2007) (internal quotations omitted). "To challenge a search on constitutional grounds, a defendant must have a legitimate expectation of privacy in the thing that was searched." *Rawlings v. Kentucky,* 448 U.S. 98, 104-06 (1980) (internal quotations omitted).  Specifically relevant here, the Sixth Circuit has held that there is no expected right of privacy on jail calls, "where a message at the start of every telephone call inform[s] the inmates that they ha[ve] no right to privacy and that their conversation [is] being recorded and possibly monitored." *United States v. Adams*, 321 F. App'x 449, 462 (6th Cir. 2009).  Also, prisoners do not have a legitimate expectation of privacy in his cell and is not protected by "the Fourth Amendment against unreasonable searches." *Hudson v. Palmer*, 468 U.S. 517, 524–26 (1984).

Neither party challenges the first element of this test, that William Sutton was married to Joyce Sutton. *Porter*, 986 F.2d at 1018.  The second test is met as to the telephone calls, as both parties agrees these were telephone conversations between William and Joyce.  *Porter*, 986 F.2d

at 1018. As for the note, the Government argues the letter found in Sutton's cell might not be from William to Joyce. For analysis purposes, and because it is admissible regardless, this Court will assume the letter was written by William to communicate to his wife.

The telephone calls are admissible because they do not meet the third element of the marital communications privilege test as they were not made in confidence. Case law has established that prisoners do not have an expectation of privacy in jail calls. *Adams*, 321 F. App'x at 462. There is no expectation of privacy, largely in part because "inmates are warned that calls made from this location are being recorded." *United States v. Hadley*, 431 F.3d 484, 489 (6th Cir. 2005). Parties do not object to this fact, that the Defendant knew his calls with his wife were being recorded. Accordingly, he had no reasonable expectation of privacy in his telephone communications with his wife from jail. Accordingly, the telephone calls fall outside marital privilege and are admissible.

Assuming the note found in Sutton's cell was written to his wife, it is admissible because it shows ongoing illegal activity that he was instructing his wife to commit. *See United States v. Howard*, 216 F. App'x 463, 471 (6th Cir. 2007). This is a narrow exception to marital privilege, as the Sixth Circuit has attempted "to protect the privacy of marriage and encourage open and frank marital communications," so only "those conversations that pertain to patently illegal activity" are admissible. *United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir. 1985). It is also not relevant to this inquiry that Joyce Sutton "may not have been indicted." *United States v. Flemming*, 658 F. App'x 777, 788 (6th Cir. 2016). According to testimony in open Court, the Government seeks to admit only the bottom portion of this note, which points directly to the indicted conduct at question here. The note seems to coach Joyce Sutton on how to testify at trial or how to speak to Prosecutors to reduce his role in the criminal activity, emphasizing the

transportation of the weapons. [R. 51-1.] This is directly related to his alleged possession of weapons as indicted in Count Five. [R. 1 at 3.] Accordingly, this Court finds that the bottom portion of the note that is related to the criminal activity named in the indictment is admissible as evidence of ongoing joint criminal activity between Sutton and his wife.

Sutton's Fourth Motion in Limine is denied because of the lack of privacy for calls made from jail and also because the note written from Sutton to his wife was directly related to the criminal conduct in question here.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby ordered that:

1. To the extent Defense counsel asked for reconsideration, Defendant's Motions in Limine [R. 36; R. 40; R. 41; R. 51] are **DENIED**, as well as his oral Motion for Reconsideration; and

2. The Government's Motion to Seal their Response in this matter is **GRANTED** [R. 43] and the Response is **SEALED** [R. 44].

This the 24th day of January, 2018.

Gregory F. Van Tatenhove
United States District Judge